76 So.2d 794 (1954)
Mirie F. GOODE, Appellant,
v.
Mollye B. GOODE, Appellee.
Supreme Court of Florida. En Banc.
December 21, 1954.
Rehearing Denied January 20, 1955.
*795 Spencer C. Cross, Ocoee, for appellant.
H.E. Merryday, Palatka, for appellee.
SEBRING, Justice.
Mirie F. Goode brought suit for divorce against his wife, Mollye B. Goode. The defendant filed her answer and counterclaim in which she prayed for a divorce against the plaintiff. In her counterclaim she also prayed "that this court will decree to her alimony * * * and counsel fees * * * and will make such orders and decrees touching the payment of said alimony, costs, charges and expenses for attorney's fees, and will protect the interest of claimant in this cause."
The plaintiff failed to file a reply to the counterclaim and, thereafter, pursuant to notice, the trial court entered a decree pro confesso against him. The attorney for the defendant mailed a copy of the decree pro confesso to the attorneys for the plaintiff and thereafter moved the court for an order appointing an examiner to take and report the testimony in respect to the matters set forth in the counterclaim. Pursuant to the motion an examiner was appointed and testimony was taken. Based upon the testimony the trial court found and adjudicated that the equities of the cause were with the counterclaimant and that a divorce decree should be entered in her favor as prayed. Included in the decree was an award to the counterclaimant of all the right, title, interest, equity or estate which the husband held and owned in certain real and personal property of which the parties were seized and possessed during their marriage, "in lieu of alimony, suit money, attorney's fees and costs."
On this appeal the plaintiff below questions the final decree on the grounds that the evidence was not sufficient to sustain the allegations of the counterclaim for divorce and that under the allegations and proof the court was not warranted in awarding to the wife the husband's interest in the property, in lieu of alimony, attorney's fees and costs. The appellee makes no contention that the appellant, having suffered the entry of a decree pro confesso upon the counterclaim, is not entitled to present these issues, and consequently that point is not decided. But see Matthews v. Wilkerson, 132 Fla. 753, 182 So. 439; Minick v. Minick, 111 Fla. 469, 149 So. 483.
The evidence in the cause is sufficient to support the decree granting divorce to the wife. Therefore the only real question on the appeal is in respect to the *796 award to the wife, in lieu of alimony, attorney's fees and costs, of the husband's undivided one-half interest in certain property owned by the parties as tenants in common.
As has already been noted, the counterclaim filed by the wife prayed for the allowance of alimony, attorney's fees and costs. It did not pray that in lieu of such allowance there be a division of property between the parties, or that the wife be given a lump sum award from the husband's property; nor did it allege any facts that on their face would have justified such an award. There is no proof that the wife assisted the husband in the accumulation of money or property during the marriage, or that she contributed any money or property of her own to the venture. The parties lived together for less than one year. Prior to the marriage the wife was employed and earned her income. She is ten years younger than the husband and is not physically incapacitated. The husband is a disabled veteran in poor health with an income of $141 per month derived from the United States government in the form of a pension.
As a result of an agreement entered into between the parties prior to the divorce proceedings the wife became the owner of a half-interest in all of the husband's accumulations and property. We gain the impression from the record that by the terms of the final decree the husband has been stripped of virtually all of the remainder of his property. While we do not suggest that the husband should not be required to pay alimony, attorney's fees and costs of suit, it does appear to us that the decree went too far in respect to the award granted; particularly in view of the fact that the counterclaim did not contain a prayer for an award of that nature but only that alimony, attorney's fees and court costs be decreed and that the court "make such orders and decrees touching the payment of [the same] as will protect the interest of claimant * * *."
"We are constrained to the view that * * * a lump sum award should be made only in those instances where some special equities might require it or make it advisable; for instance, where the wife may have brought to the marriage, or assisted her husband in accumulating, property and where it is clearly established that the husband has assets sufficient in amount to pay the gross award. * * * There may be other situations which might justify or possibly require a lump sum award, but it should never be made unless the husband is in a financial position to make payment of such gross award without endangering or actually impairing his economic status." Yandell v. Yandell, Fla., 39 So.2d 554, 556.
The cause should be reversed for such further proceedings with reference to the claim for alimony as may conform with law and the principles herein stated.
It is so ordered.
THOMAS, HOBSON, MATHEWS and DREW, JJ., concur.
ROBERTS, C.J., and TERRELL, J., dissent.
TERRELL, Justice (dissenting).
A study of the record in this case hangs no such portrait in my mental gallery as that described by the majority opinion. The parties had several times recited the marital vows but had as often been loosed from them. When the matrimonial bug bit this time, the husband was possessed of a limited amount of worldly goods, a modest pension from his Uncle Sam (One Hundred Forty-One Dollars per month) and the wife was telegraph operator at Nashville, Georgia. The affair moved so fast that in less than six months acquaintance they were facing the preacher for another try at matrimony.
Trouble started early but they lived an intermittent married life four days over one year when both brought suit for divorce, *797 alleging frequent indulgence in a violent and ungovernable temper. If we may believe half what either charged against the other, they spent day and night brewing domestic tornadoes and came to the parting of the ways with nerves frayed, health wrecked, tempers distraught and bitter antagonism one for the other. He would roll on the floor like a mule in the lot, wring his hands and spit his dentures across the room. He kicked her out of the bed and from that springboard abused her so that life became intolerable. Confronted with such antics the chancellor balanced the scales on the side of the wife, granted her a divorce and a lump sum alimony in that he required the husband to convey to her all his interest in a certain parcel of land including the residence and furnishings therein which was owned by the parties as an estate by the entireties or as tenants in common. It was in lieu of all other sums for alimony, suit money, attorney's fees and costs of the litigation.
The statute, F.S.Section 65.08, F.S.A., permits payment of a lump sum alimony "as from the circumstances of the parties and nature of the case may be fit, equitable and just." The chancellor and not this Court is the determiner of what is "fit, equitable and just." He had the parties before him, knew the situation, many factors of which could not be transmitted to this Court in a printed record. This Court, for example, has no impression of the inroads that were made on the wife's health by the abuse she suffered from the husband, what it cost her to give up her job, what expense she will ultimately be put to before she is through with this case, including other liabilities that were before and were appraised by the chancellor. In addition to his pension the husband was a fairly able bodied man and was making $25 per week as a packing house worker, he had a new Chevrolet automobile, some life insurance policies, a bank account and other assets from which to provide a living. He sold one piece of land for $16,000 soon after the marriage, only a portion of which was used to purchase the land covered in the lump sum alimony. The record shows that the wife had no assets, she was not able to work, she was left afoot but he was given the automobile.
Account of these factors I think this is the kind of case that lump sum alimony was made for. The marriage was on the rocks, there was no hope for restoration of the conjugal ties, the parties had an innate hatred for each other, their tangible assets were present and their future income was not shown to be more than they would need for subsistence. A majority of this Court, sitting 200 miles from the locus, has substituted its discretion for that of the chancellor on a matter that it cannot possibly be as conversant with as he was.
Its judgment appears predicated on the theory that the wife was given more than she was entitled to for the length of time the parties were married. She got one-half interest in a place that cost them $8,500 and was required to pay attorney's fees, costs and suit money from that. She was left afoot while he was left his pension, life insurance, automobile and other assets that we are not familiar with. In reaching its judgment I think the majority invaded the discretion of the chancellor, abandoned the realities of the case and based its judgment on technical observations with reference to pleadings and the applicable statute. Technicalities may at times be appropriately taken advantage of by lawyers but they are dangerous tools for a judge to manipulate when confronted with the justice of the cause. By the facts revealed, this Court cannot possibly know what the chancellor knew about this case. Its judgment is fortified by Yandell v. Yandell, Fla., 39 So.2d 554, the background of which is totally different from that in the present case. Lump sum alimony is discretionary with the chancellor, based on the "circumstances of the parties and nature of the case may be fit, equitable and just." I find no showing that the chancellor abused his discretion.
I therefore dissent and am authorized to say that ROBERTS, C.J., joins in this dissent.
ROBERTS, C.J., concurs.